## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **COLORMASTERS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:17-CV-0561-VEH** |
| | ) | |
| **RESEARCH SOLUTIONS GROUP,** | ) | |
| **INC., AMERICAN INKS &** | ) | |
| **COATING CORPORATION,** | ) | |
| **FLINT GROUP NORTH AMERICA** | ) | |
| **CORPORATION, and FLINT INK** | ) | |
| **NORTH AMERICA** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Colormasters, LLC ("Colormasters") originally filed this action in the

Circuit Court of Marshall County, Alabama, on February 28, 2017. (Doc.1 ¶ 1; *see*

*also* Doc. 1-1 at 2).[1] Colormasters, who manufactures flexible wrap and packing for

items such as bottled water, soft drinks and food products, pursues recovery for faulty

ink that it was supplied. (Doc. 1 at ¶ 2; Doc. 1-1 at 4 ¶ 6).

Defendants Flint Group North America Corporation ("Flint Group"), Flint Ink

---

[1]  All page references to (Doc. 1-1) correspond with the Court's CM/ECF numbering
system.

North America Corporation,[2] and American Inks & Coating Corp. ("AIC") (collectively, the "Removing Defendants") removed Colormasters' lawsuit to this Court on April 7, 2017, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1 at ¶ 9). In relying upon the existence of diversity jurisdiction, the Removing Defendants contend that the Court should disregard the in-state citizenship of their co-defendant, Research Solutions Group, Inc. ("Research Solutions"), on the basis that Research Solutions has been fraudulently joined. (*Id.* at ¶ 8).

The Court has before it Colormasters' Motion To Remand (Doc. 22) and Motion To Strike the Affidavit of Julio Rodriquez (Doc. 23, the "Motion To Strike"), both of which were filed on April 25, 2017. The Removing Defendants filed their opposition (Doc. 27) to the Motion to Remand and response (Doc. 28) to the Motion To Strike on May 9, 2017.[3] Colormasters replied to the Motion To Remand on May 11, 2017. (Doc. 30). Because the Court concludes that it lacks subject matter jurisdiction, Colormasters' Motion To Remand is due to be granted, and the Motion To Strike is due to be termed as moot.

---

[2] Flint Ink North America Corporation and Flint Group North America Corporation are the same entity. (Doc. 1 at 1 fn.1).

[3] Also on May 9, 2017, the Removing Defendants filed a request for oral argument. (Doc. 29). However, the Court has determined that oral argument is unnecessary in this case, given the depth of consideration and sufficiency of the briefs filed by both sides. Accordingly, to the extent that it may be construed as a motion, the request for oral argument is hereby **DENIED**.

## II.    LEGAL STANDARDS

### A.    General Jurisdictional Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.'" *Univ. of S. Ala.*, 168 F.3d at 409 (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S. Ct. 418, 425, 30 L. Ed. 2d 383 (1971)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party

could work a wrongful extension of federal jurisdiction and give district courts power

the Congress denied them." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992,

1000-01 (11th Cir. 1982) (footnote and internal citations omitted). Furthermore,

"[b]ecause removal jurisdiction raises significant federalism concerns, federal courts

are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411

(citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868,

872, 85 L. Ed. 1214 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that—with

the express exception of civil rights cases that have been removed— orders of remand

by district courts based upon certain grounds, including in particular those premised

upon lack of subject matter jurisdiction, are entirely insulated from review. More

specifically, § 1447(d) provides:

> [a]n order remanding a case to the State court from which it was
> removed is not reviewable on appeal or otherwise, except that an order
> remanding a case to the State court from which it was removed pursuant
> to section 1442 or 1443 of this title shall be reviewable by appeal or
> otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547

U.S. 633, 642, 126 S. Ct. 2145, 2154, 165 L. Ed. 2d 92 (2006) (recognizing that

"[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C.

§ 1447(c), review is unavailable no matter how plain the legal error in ordering the

remand" (internal citation and alteration omitted)); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234, 127 S. Ct. 2411, 2418, 168 L. Ed. 2d 112 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

## B.    Diversity Jurisdiction

The Removing Defendants premise their removal upon this Court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.    *Citizenship Requirement*

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

### 2.    *Fraudulent Joinder Principles*

The dispute over satisfaction of the citizenship requirement in this case has to do with whether Colormasters has fraudulently joined the non-diverse co-defendant, Research Solutions. "[W]hen there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[,]" fraudulent joinder is established. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Relatedly, if fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded for diversity requirement purposes. *See id.*

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There, the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a "heavy one." *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Id.* at 1538.[4] The Eleventh Circuit also recognizes a third type of fraudulent joinder

---

[4] Under the second prong of the fraudulent joinder test, the Court must determine whether Colormasters has fraudulently pled facts relating to a party's citizenship in an effort to

where "a diverse defendant is joined with a nondiverse defendant as to whom there

is no joint, several, or alternative liability and where the claim against the diverse

defendant has no real connection to the claim against the nondiverse defendant."

*Triggs*, 154 F.3d at 1287.

The standard is onerous because, absent fraudulent joinder, a plaintiff has the

absolute right to choose his forum. That is, courts must keep in mind that the plaintiff

is the master of his complaint and has the right to determine how and where he will

fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent
> joinder, plaintiff has the right to select the forum, to elect whether to sue
> joint tortfeasors and to prosecute his own suit in his own way to a final
> determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478
> (5th Cir. 1962).[5]   The strict construction of removal statutes also
> prevents "exposing the plaintiff to the possibility that he will win a final
> judgment in federal court, only to have it determined that the court
> lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips
> Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A
> C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures §
> 3721), a result that is costly not only for the plaintiff, but for all the
> parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

---

avoid diversity jurisdiction.  No issue related to the second prong exists in this case.
Accordingly, the Court limits its analysis to the first prong.

[5]   In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior
to October 1, 1981.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one[,]" *Crowe*, 113 F.3d at 1538 (internal quotation marks omitted), requiring clear and convincing evidence and particularity in pleading. *Parks*, 308 F.2d at 478 (citing Barron and Holtzoff, *Federal Practice and Procedure*, § 103, p. 478). Although affidavits and depositions may be considered, the Court must not undertake to decide the merits of the claim but must look to whether there is a <u>possibility</u> that a claim exists. More particularly, the *Crowe* court explained the framework for analyzing fraudulent joinder as:

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under FED. R. CIV. P. 56(b)," [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry "must not subsume substantive determination." *Id.* at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." *Id.* at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id.* "<u>If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court</u>." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

> The fact that the plaintiffs may not ultimately prevail against the
> individual defendants because of an insufficient causal link between the
> defendants' actions and the plaintiffs' injuries does not mean that the
> plaintiffs have not stated a cause of action for purposes of the fraudulent
> joinder analysis. In a fraudulent joinder inquiry, "federal courts are not
> to weigh the merits of a plaintiff's claim beyond determining whether it
> is an arguable one under state law." *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT&T Co.*,139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also*

*Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there

is a possibility that a state court would find that the complaint states a cause of action

against any of the resident defendants, the federal court must find that the joinder was

proper and remand the case to state court.").[6]

## III.   ANALYSIS

### A.      The Motion To Strike

A federal court always has jurisdiction to determine whether it has jurisdiction.

*United States v. Ruiz*, 538 U.S. 622, 628 (2002). In doing so, this Court will first

resolve the parties' dispute regarding what evidence is properly before it.

Mr. Rodriguez's affidavit (doc. 1-3 at 3) opines that Research Solutions cannot

be liable. Colormasters' Motion To Strike (doc. 23) seeks to strike the affidavit of Mr.

Rodriquez on the basis that he has not been qualified as an expert and fails to describe

---

[6] Alabama continues to require only notice pleading; therefore, the standard is
"possibility," not "plausibility." *McKelvin v. Smith*, 85 So. 3d 386, 389 (Ala. Civ. App. 2010).

the grounds and bases for his opinions. Colormasters may be correct. However, more important for this Court is the fact that just because a party may not prevail ultimately at trial does not mean that, at the pleadings stage, no possible claim exists. Thus, Mr. Rodriquez's conclusory opinions as to the ultimate issue of Research Solutions' actual liability at best shows, in light of Colormasters' counter-declarations, the existence of a genuine issue of material fact. As such, it fails to show the absence of any possibility that Colormasters' claims against Research Solutions state a cause of action against Research Solutions. Accordingly, the Motion To Strike (doc. 23) is **MOOT**.

**B.  Possibility of a Cause of Action Against Research Solutions**

The Removing Defendants claim that (1) Colormasters provided no facts to show even the possibility of Research Solutions' liability in this action, thus depriving Research Solutions of adequate notice; and (2) there is no possibility of Colormasters' establishing its claims against Research Solutions.

Colormasters has pled two causes of action against Research Solutions: breach of implied warranty of fitness for a particular purpose (Count Eleven), and negligence (Count Twelve). Colormasters pled the following facts, among others, to support its claims against Research Solutions:

8.  At times, solvents are required for the inks. Colormasters

purchased solvents from defendant Research [Solutions], with the purchases being for solvents as specified by AIC. AIC would then use the solvents to achieve proper viscosities with AIC inks. Research [Solutions] knew that the solvents it sold were intended for use with inks to apply to flexible packaging manufactured by Colormasters, and Research Group was responsible for providing good and merchantable solvents suitable for the purposes of batching inks for use by Colormasters.

9.      In approximately April 2016, Colormasters began receiving complaints from one of its largest customers, Absopure Water Company ("Absopure"), that the white ink on the flexible packaging was yellowing. Other problems soon ensued, including ink buildup on the rollers as the packaging film was sent through the shrink tunnels where the packaging becomes a form of "shrink wrap" for packages of bottled water. AIC was promptly notified and the problem was determined to be with the AIC ink, vehicle or other components. Solvents provided by Research [Solutions] were also alleged to be a factor in the ink failures.

* * *

14.     From time to time, Flint uses solvents provided by defendant Research [Solutions] to try to achieve proper viscosities with Flint inks. Again, defendant Research [Solutions] knew at all times that Colormasters was purchasing solvent from Research [Solutions] for use with inks to apply to flexible packaging manufactured by Colormasters. Flint was responsible for proper use of the solvents in "batching" the final ink products supplied to Colormasters. However, Research [Solutions] was responsible for providing good and merchantable solvents suitable for the purposes of batching inks for use by Colormasters.

(Doc. 1-1 at 4-6). In sum, Colormasters alleges that the printing failure is due to the

inks supplied by the Removing Defendants, or the solvent provided by Research

11

Solutions, or both.

Outside of the allegations in the complaint, both parties have also attached extrinsic evidence to support the plausibility – or implausibility – of the claims against Research Solutions. As a result, the Court is now faced with what has escalated into a battle of the declarations. While the Court may consider affidavits and other statements in addition to the pleadings, the burden is on the Removing Defendants to prove clearly and convincingly that Research Solutions was fraudulently joined. *See Crowe*, 113 F.3d at 1538 ("The federal court makes these determinations [as to whether the case should be remanded] based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Coker*, 709 F.2d at 1440 ("Both parties may submit affidavits and deposition transcripts."); *see also B., Inc.*, 663 F.2d at 549 ("In support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint. The district court must then evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.").

Colormasters comes armed with declarations by three of its employees, two of

whom swear that they were informed that the solvents from Research Solutions were responsible for the ink failures and one of whom declares that Research Solutions was notified of the problem and came to inspect the issue:

> During our inquiry, we discovered retained solvents in some of the inks we analyzed. Representatives of both AIC and Flint told me, at various times, that they believed or suspected that the solvents from Research Solutions were responsible or somehow contributed to some of the ink failures.

Declaration of Vera Faustin, (Doc. 22-1 at 3).

> At one meeting in 2017 held in my offices in Albertville, Alabama, Flint representatives Clay Davis and Nicki Kerrigan both blamed the ink problem on what they termed "slow solvents" . . . Mr. Davis and Mr. Kerrigan said that because solvents caused the problem, Mr. Davis and Mr. Kerrigan then suggested that Flint should only bear 50% responsibility. I argued that Flint should accept full responsibility for defects because Flint was solely responsible for use of the solvents, but Flint rejected that and continued to insist that "slow solvents" were not its responsibility and were at least partly to blame for the print failures.

Declaration of Dennis Hicks, (Doc. 22-2 at 3).

> In 2016 Colormasters experienced severe problems with some of its printed film that appeared to result from either or both of the ink or solvents. At that time, our foreman reported that some of the solvents smelled odd to him. We contacted Research Solutions and they came to our facility and pumped out the solvents, and a Research Solutions technician retrieved solvent samples from Colormasters for testing. Later, a vice president of Research Solutions, Rick Higginbotham, visited our facility to discuss issues arising from the solvents.

Declaration of Anita Crowell, (Doc. 30-1 at 2).

The Removing Defendants, in turn, buttress their fraudulent joinder argument

with affidavits by three Flint employees who claim the defects could not have been

caused by the solvents provided by Research Solutions and that Research Solutions

cannot be held responsible for the faulty ink:

> Research Solutions is in no way related to the production or sale of the alleged defective inks. Rather, AIC and Flint Groups use solvents provided by Research Solutions when preparing their inks for customers, such as Colormasters . . . I am unaware of any claims by Colormasters, during the pendency of this lawsuit or otherwise, that the solvents provided by Research Solutions to AIC and Flint Groups were defective. Rather, Colormasters has claimed only [that] the AIC and Flint Groups improperly used solvents provided by Research Solutions in creating their own ink products for Colormasters.

Affidavit of Jerry Mosley, (Doc. 1-2 at 2-3).

> Based on my extensive knowledge, as described above, the defects described by Colormasters in its Complaint could not have been caused by any solvents, used by AIC to manufacture its products for Colormasters. The alleged defects described by Colormasters simply are not consistent with any kind of defect that could be caused by a solvent.

Affidavit of Julio Rodriquez, (Doc. 1-3 at 3).

> During these discussions, no one from Flint Group, AIC, or Colormasters blamed the quality or the properties of the solvent for the printing problems and defects. Research Solutions was never discussed as having any responsibility for the printing problems and defects . . . Flint Group, AIC, and Colormasters considered solvent as a possible cause of the printing problems and defects, but only with respect to how the solvent was being used. In particular, Flint Group and AIC, myself included, believed that Colormasters was using too much solvent in its printing process.

Affidavit of Nicki Kerrigan, (Doc. 27-1 at 2).

> Research Solutions was not responsible for mixing the solvent with ink
> and did not make any representations to Flint Group, AIC, or
> Colormasters regarding how its solvent should be applied.

(*Id.* at 3).

In order to have sufficiently pled its claims, Colormasters needed only to have met Alabama pleading standards, not federal plausibility standards. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011). Under Alabama law, a plaintiff has sufficiently pled a claim when it gives the opposing party "fair notice of the pleader's claim and the grounds upon which it rests" and is sufficient even if containing only "a generalized statement of facts which will support a claim for relief." *McKelvin*, 85 So. 3d at 389 (emphasis added, citations omitted). If even one of these two claims could possibly state a cause of action against Research Solutions, the Removing Defendants' fraudulent joinder argument must fail. *Stillwell*, 663 F.3d at 1332-33.

To agree with the Removing Defendants that they have clearly and convincingly shown that Colormasters fraudulently joined Research Solutions, the Court would have to resolve all questions of credibility and weigh all evidence, including the competing sworn statements, in favor of Research Solutions as to the

claims that Colormasters has, from all appearances, in good faith reasonably asserted

against it. However, binding authority expressly forbids this Court from putting the

merit cart before the jurisdiction horse:

> [i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims <u>must be limited to checking for obviously fraudulent or frivolous claims</u>. Although we have said that district courts may look beyond the face of the complaint, we emphasize that <u>the district court is to stop short of adjudicating the merits of causes that do not appear readily to be frivolous or fraudulent</u>.

*Crowe*, 113 F.3d at 1541-42 (emphases added). The Court "must evaluate the factual

allegations in the light most favorable to the plaintiff and must resolve any

uncertainties about state substantive law in favor of the plaintiff." *Id.* at 1538.

Here, the disputed nature of the relevant facts themselves tilts the scales

towards remand. Based upon the record in front of this Court, there is at least a

possibility that a state court might find that Colormasters has stated at least one cause

of action against Research Solutions.[7]

## C. Alternative Liability of Research Solutions

In its Motion To Dismiss, Colormasters also asserts that the Removing

Defendants have not satisfied the third fraudulent joinder test, which requires that the

---

[7] Though not dispositive of the plausibility of the claims, the Court also observes that Research Solutions answered the complaint, rather than filing a Rule 12(b) motion, on April 21, 2017. (Doc. 18).

removing party demonstrate that there is no joint, several, or alternative liability

between the diverse and non-diverse defendants and that the claim against the diverse

defendant has "no real connection to the claim against the non-diverse defendant."

*Triggs*, 154 F.3d at 1287. Though the Removing Defendants did not explicitly

address the third fraudulent joinder prong in either its Notice of Removal (doc. 1) or

its Response to the Motion To Remand (doc. 27), for the sake of completeness the

Court will also analyze Colormasters' complaint under this theory.

As Colormasters points out, it pled alternative liability in both causes of action

against Research Solutions in the complaint:

> 65.    To the extent that the ink failures described above are not solely the fault and responsibility of AIC and Flint, the ink failures are attributable to [a] breach of warranties owed to Colormasters by Research [Solutions].

* * *

> 71.    To the extent that the ink failures described above are not solely the fault and responsibility of AIC and Flint, the ink failures are attributable to [a] breach of [a] duty owed to Colormasters and negligence on the part of Research [Solutions].

(Doc. 1-1 at 13, 14). Moreover, the Removing Defendants have failed to establish that

the claims against them have no real connection to the claims against Research

Solutions. To the contrary, Colormasters' complaint demonstrates the connectivity

of the alleged harm caused by either the Removing Defendants' inks, or Research

17

Solutions' solvents, or both. *See, e.g.,* (Doc. 1-1 at 4) ("Colormasters purchased solvents from defendant Research [Solutions], with the purchased being for solvents as specified by AIC. AIC would then use the solvents to achieve proper viscosities with AIC inks."); (*Id.* at 5) ("The AIC inks on the film sold by Colormasters to Absopure were delivered and prepared by AIC using solvents provided by Research [Solutions]."). Accordingly, fraudulent joinder has also not been established through the alternate theory of fraudulent joinder set out in *Triggs.*

As Colormasters' claims against Research Solutions are not overtly frivolous or fraudulent, and as the claims against the Removing Defendants and Research Solutions are closely intertwined, this Court concludes that the Removing Defendants have failed to meet their burden of establishing fraudulent joinder by clear and convincing evidence. The parties must lock horns in state court.

## IV.    CONCLUSION

As complete diversity does not exist between the parties, the Court lacks subject matter jurisdiction over this action. Colormasters' Motion To Remand (Doc. 22) is due to be granted, and the Motion To Strike (doc. 23) is due to be termed as moot. The Court will separately enter an order consistent with this memorandum opinion and remand this lawsuit to the Circuit Court of Marshall County, Alabama.

**DONE** and **ORDERED** this the 22nd of August, 2017.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge